UNITED STATES OF AMERICA,

-vs-

JOSEPH LOMBARDO,

---

16-CR-140

---

# EXHIBIT B



*East Amherst*
*Psychology Group LLP.*

SOUTH CAYUGA ROAD
James P. Butters, Psy.D.
Lorraine M. Engl, Ph.D.
Carol "Cari" Evans, Ph.D.
Tedd R. Habberfield, Ph.D.
Michael E. Rutter, Ph.D.

TRANSIT ROAD
Elizabeth Botzer, Ph.D.
William M. Casey, Ph.D.
Cary S. Chugh, Ph.D.
Catherine P. Cook-Cottone, Ph.D.
Mary C. D'Arrigo, Ph.D.
Warren D. Keller, Ph.D.
Paul M. Kopfer, Ph.D.
Bernadette C. McCourt, Ph.D.
Nancy L. Zoeller, Ph.D.

MAIN STREET
Karen W. Chesnutt, Ph.D.

RE:   **JOSEPH LOMBARDO**
DOB: 03/20/1991

February 6, 2017

Justin D. Ginter, Esq.
Lipsitz, Green, Scime, Cambria LLP
42 Delaware Avenue, Suite 120
Buffalo, NY 14202

Joel L. Daniels, Esq.
42 Delaware Avenue
Suite 700
Buffalo, NY 14202

Dear Mr. Ginter and Mr. Daniels,

At your request, I conducted a psychological evaluation on your client, Joseph

Lombardo. The evaluation took place over two days, January 20 and January 23, 2017.

The purpose of the evaluation is to provide an assessment of psychological functioning as

it relates to his crime, a risk assessment, a determination of sexual dangerousness, and to

determine the need for and potential benefit of mental health and sex offender treatment.

Procedures included a clinical interview, mental status examination, the administration of

two psychological tests, the Minnesota Multiphasic Personality Inventory-2 (MMPI-2)

and the Millon Clinical Multiaxial Inventory-III (MCMI-III), and the use of two actuarial

CONFIDENTIAL AND PRIVILEGED INFORMATION
FOR PROFESSIONAL USE ONLY                          **JOSEPH LOMBARDO**        2

risk assessment tools, the Minnesota Sex Offender Screening Tool-Revised (MnSOST-3.1) and the STATIC-99. In addition, I have reviewed 1) the Criminal Complaint dated February 5, 2016 (USA v. Joseph Lombardo); 2) the Pretrial Services Report dated February 9, 2016; 3) the Plea Agreement dated November 29, 2016; and 5) the Presentence Investigation Report dated January 23, 2017. This letter will summarize my findings.

As you know, Joseph Lombardo is a 25-year old male from Lancaster, NY. I am aware on November 29, 2016, Mr. Lombardo pled guilty to all three counts of a 3-count Information which charged him with Possession of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(b), Receipt of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(A), and Receipt of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(A). This crime carries a maximum possible sentence of 235 months of imprisonment, a maximum fine for each count of $250,000, and a period of supervised release of at least five years and up to life.

***CLINICAL INTERVIEW AND MENTAL STATUS EXAMINATION***

The interview with Mr. Lombardo was conducted at the Niagara County Jail on January

20, 2017. He was dressed in prison attire. He was cooperative to the evaluation

procedure. Speech was of normal rate and volume.  He denied feelings of

anxiety or disturbed mood. Thought processes were intact. There were no signs of

psychosis. He denied suicidal ideation and thoughts of harming others. Insight and

judgment were fair. He appeared to be of average intelligence.


Mr. Lombardo was born in Buffalo, NY, and has been a lifelong resident of western New

York. His parents separated when he was an infant. Although his mother and stepfather

primarily raised him, he spent time with his biological father until age 8, when his father

relocated to Las Vegas. Joseph had virtually no contact with his father until age 15. He

indicated that he felt bad about not seeing his father and remembers missing him. Mr.

Lombardo describes a good relationship with his mother and stepfather. He has two older

sisters and two stepsiblings. He denies any childhood experiences of emotional, physical,

or sexual abuse.


Mr. Lombardo experienced brachial plexus palsy during childbirth. This nerve damage

left him with limited mobility in his left arm. Educational records indicate that he

received academic accommodations beginning in 2nd grade due to his physical limitations

and symptoms of Attention Deficit Disorder. He reportedly had deficits in reading and

written language. Peers at school often teased him due to his physical disability. Due to

CONFIDENTIAL AND PRIVILEGED INFORMATION
FOR PROFESSIONAL USE ONLY                                              JOSEPH LOMBARDO      4

his disability and the fact that he was overweight, Mr. Lombardo had a poor self-image,

lacked self-confidence, and was very self-conscious.


Mr. Lombardo has never been married. He fathered a child when he was approximately

15 years old. He left Lancaster High School midway through the 11th grade in order to

work more hours to support his son. When his son was six and began to attend school,

Mr. Lombardo assumed full custody. Mr. Lombardo appears to be a devoted father; he

reports a very positive relationship with his now 10-year-old son, stating, "He's my

whole life."


Mr. Lombardo has been employed steadily since he was a teenager, often working two

jobs. He worked as a delivery driver from 2008-2009. He was employed as an unarmed

security guard from 2009-2014. He worked part-time in retail sales from 2011-2014.

From 2014 until his arrest in February 2016, he was a sales associate for AT&T. He

prides himself on being a conscientious, hard worker.


Mr. Lombardo reported that he is in good physical health. He denied any history of

mental illness and has never received mental health services or psychotropic medication.

He denies any difficulties related to alcohol or substance use.


Mr. Lombardo embraced the responsibilities of being a teenage father. He grew up

quickly, taking very seriously his roles as a parent and breadwinner. However, in many

ways, his psychosocial development stopped at age 15. He was not able to have the

JOSEPH LOMBARDO     5

typical experiences of adolescence and young adulthood, such as high school social events and dating. It is no coincidence that the victims of the instant offense were approximately fifteen years of age. Mr. Lombardo's criminal behavior may be viewed as an inappropriate way to recapture his own adolescence by seeking the very kinds of experiences he had missed.

In May 2014, the Lancaster Police Department executed a search warrant at Mr. Lombardo's residence, recovering several electronic devices. It is noteworthy that from that time until his arrest in February 2016, a period of nearly two years, Mr. Lombardo refrained from any inappropriate sexual behavior or other illegal activity. This suggests that Mr. Lombardo is in good control of his impulses, and that his inappropriate behavior was not compulsive in nature. It is significant that he was successful in discontinuing these behaviors without treatment intervention.

Mr. Lombardo has accepted full responsibility and remorse for his inappropriate sexual behavior. He expressed strong motivation to lead a law-abiding life in order to re-engage and maintain a relationship with his son.

### DSM 5 DIAGNOSES

No Diagnosis

CONFIDENTIAL AND PRIVILEGED INFORMATION
FOR PROFESSIONAL USE ONLY                          JOSEPH LOMBARDO      6

### ASSESSMENT FINDINGS

The MMPI-2 and MCMI-III were chosen because together, they are considered the gold standard of objective assessment tools for individuals accused of sex offenses. The MMPI-2 is the most extensively investigated diagnostic tool for this population, and is supported by hundreds of empirical studies. The MMPI-2 includes several validity scales to detect defensiveness, inconsistent responding, "faking good," and "faking bad." The profiles were determined to be valid and interpretively useful; therefore, they are considered a good indication of his present level of psychological functioning. There were no signs of any psychiatric illness including anxiety, mood problems, personality disorder, and psychosis. Therefore, there is no DSM 5 psychiatric diagnosis. There were no elevations consistent with sexual problems/concerns. Further, there were no apparent problems with anger management.

A risk assessment was performed using the MnSOST-3.1 and the STATIC-99. Extensive research has established that these actuarial risk assessment tools are reliable and valid; they provide incremental validity over clinical judgment alone. The Association for the Treatment of Sexual Abusers (ATSA) recommends that these two measures, when used together, offer the best available predictive validity for sexual crime recidivism. It is my impression that Mr. Lombardo does not suffer from antisocial personality disorder, psychopathy, or impulse control difficulties. He is not a danger to himself or others. Mr. Lombardo does not have sexual urges or fantasies involving children, does not appear to

CONFIDENTIAL AND PRIVILEGED INFORMATION
FOR PROFESSIONAL USE ONLY                                    JOSEPH LOMBARDO      7

have an interest in child pornography, and does not exhibit symptoms consistent with

pedophilic disorder.

Overall, Mr. Lombardo's recidivism risk is determined to be Below Average. The current

findings from empirically validated assessment tools and actuarial risk assessment

instruments enable me to categorize him as a below average risk for engaging in

inappropriate sexual contact with a child.  Mr. Lombardo does not have a psychological,

physical or organic abnormality that decreases his ability to control his sexual behavior.

Together, Mr. Lombardo's absence of major mental illness and his scores on pertinent

risk factors make him more likely to achieve a successful outcome from sexual offender

treatment and less likely to re-offend.

## RECOMMENDATIONS

Based on his history, the clinical interview, and test findings, it is clear that Mr.

Lombardo does not suffer from a major mental illness or substance abuse problems. He

has had a physical disability since birth, which has had a negative impact on his self-

esteem, his self-image, and his peer relationships. He became a father at age 15, and by

all accounts has been a devoted, responsible parent, and hard worker.

Based on this evaluation, my review of supporting documentation, my awareness of the

sentencing guidelines, his acceptance of responsibility, and his below average risk for

CONFIDENTIAL AND PRIVILEGED INFORMATION
FOR PROFESSIONAL USE ONLY                             **JOSEPH LOMBARDO**     8

recidivism, I recommend that the Court consider the mandatory minimum term of

imprisonment of five years in a facility that includes: 1) sex offender counseling and 2)

mental health counseling to address issues related to self-esteem and learning more age

appropriate ways to meet his needs for affection and closeness.

In light of his strong motivation to lead a law-abiding life and his determination to

continue to become a better person so that he could be a good father to his son,

I believe that he has the potential to derive benefit from a lengthy period of supervised

release including mandatory outpatient sex offender treatment, and mental health

counseling, if needed. These steps should provide adequate deterrence to criminal

conduct and protect the public from further crimes by the defendant.

I hope that this information is helpful.  Please contact me with any other questions or concerns

about your client.

Sincerely,

Michael E. Rutter, Ph.D., Licensed Psychologist
Clinical Member, Association for the Treatment of Sexual Abusers (ATSA)
Associate Professor
Department of Counseling and Human Services
Clinical Mental Health Counseling, Program Coordinator
Canisius College