IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

   -v-                                                                                     16-CR-140-V

JOSEPH LOMBARDO,

                            Defendant.

_____

## GOVERNMENT'S RESPONSE TO THE
## DEFENDANT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, by and through its attorney, James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, respectfully files this response in opposition to the defendant's sentencing memorandum (Dkt. #26).

### PRELIMINARY STATEMENT

On November 29, 2016, the defendant appeared before this Court and pled guilty to a three count Information charging one count of possession of child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and two counts of receipt of child pornography in violation of Title 18, United States Code, Section 2252A(a)(2)(A). The Presentence Report ("PSR"), consistent with the plea agreement, determined that the defendant, with a total offense level of 36 and criminal history category of I, faces a guideline range of 188 to 235 months imprisonment. The plea agreement executed by the parties allowed the defendant to request a non-guideline sentence. On February 14, 2017, the

defendant filed a sentencing memorandum (Dkt. #26), requesting an unspecified non-guideline sentence. This memorandum is submitted in opposition to defendant's request for a non-guideline sentence and in support of the government's contention that this Court should impose a guideline sentence of imprisonment

## Statement of Facts

The government concurs with and relies on the statement of facts outlined in the PSR at paragraphs 18 through 41.

## DISCUSSION

**I.    In Considering the §3553(a) Factors, this Court Should Conclude That a Guideline Sentence of Imprisonment Provides the Proper Punishment for the Offense of Conviction**

The United States recognizes that since *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are advisory rather than statutorily mandated. However, when imposing a sentence, the Court is required to consider the guidelines, but must fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). As noted by the Supreme Court, the guidelines have a "real and pervasive effect … on sentencing" and therefore, "are not only the starting point for most federal sentencing proceedings but also the lodestar." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016). The United States contends that a sentence of 188 to 235 months, which is the advisory guideline range, is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

Under Section 3553(a), the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. *See United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ("In calibrating our review for reasonableness, we will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress .... It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts are required to consider."). The sentencing court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A court that imposes a sentence outside the applicable advisory guidelines range must do so on notice to the parties and must state "with specificity" both at sentencing and in the written judgment and commitment order its reasons for doing so. 18 U.S.C. § 3553(c).

Based on the § 3553(a) factors, as set forth below, the government respectfully submits that a guideline sentence of imprisonment is warranted.

**A.     The Defendant Has Engaged in Hands-On Sexual Abuse in the Past**

During the investigation, it was learned that on November 12, 2003, a minor female relative of the defendant's (hereinafter "Victim Relative") made a report to the Lancaster Police Department of being sexually abused by the defendant. At the time of the report the defendant was 13-years-old, and the Victim Relative was 11-years-old. The Lancaster Police Department report for this incident indicates that after obtaining the initial complaint, the

Victim Relative was interviewed at her residence on November 13, 2003, and provided a statement to a detective about how the defendant touched her vagina and exposed himself. The report further indicates that while the detective was present at the residence, the mother of the Victim Relative received a call from her ex-husband, David Calire. The detective spoke with Mr. Calire over the telephone, and reported that Mr. Calire "immediately started to scream, saying his ex-wife put [the Victim Relative] up to say these things against his stepson Joseph Lombardo." Additionally, during the detective's interview of the Victim Relative, she reported that she had told a 12-year-old friend about the defendant. Subsequently, on November 18, 2003, the detective interviewed the Victim Relative's friend, who stated that the Victim Relative told her that "Joe" had her remove her clothing and that he removed his clothing.

On February 26, 2016, the Victim Relative, who is now 24-years-old, was interviewed by the FBI at her residence. During the interview, she detailed how she was sexually abused by the defendant starting in 2003, during which he would digitally penetrate her and told her that if she ever told anyone her life would be a "living hell." The Victim Relative further reported that David Calire forced her to recant her statement, which she ultimately did.

In his sentencing memorandum, the defendant claims that Victim Relative fabricated her story and is lying. The government stands by the claim of the Victim Relative that she has previously been sexually abused by the defendant, and based on her cooperation to date, it is believed she would be willing to testify at a sentencing hearing on this issue.[1] Pursuant

---

[1] The government is in the process of inquiring with Victim Relative whether she would be willing to testify at such a hearing.

to Guideline § 6A1.3(a), when "any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." Therefore, the government respectfully requests that the Court schedule a sentencing hearing, during which the government may call Victim Relative to testify about the abuse she suffered.

### B.    The Defendant is Sexually Attracted to Minor Females

During the defendant's interview with the probation officer, the defendant attempted to minimize his attraction to minor females by stating that he is only attracted to "good looking females" and it is not the age that matters. PSR, ¶ 53. Likewise, as part of his sentencing memorandum, the defendant presented a sexual offender evaluation report indicating that he has "no elevations consistent with sexual problems/concerns." Dkt. #26-2, p. 7.

However, based on the facts of this case, including the defendant's sexual exploitation of at least three known minor female victims, the government has a hard time accepting the defendant's relatively benign explanation of his criminal conduct. As outlined in the factual basis of the plea agreement and in the PSR, the defendant intentionally sought out minor females, and engaged in sexual activity with two of them. The government equally has a difficult time accepting the conclusory sexual offender evaluation report proffered by the defendant which provides none of the data to support the opinions in the report. Therefore, although the defendant now acknowledges through his plea of guilty that he intentionally sought out child pornography, he does not appear to be ready or willing at this point to admit

his sexual attraction to minor females, despite significant evidence to the contrary.[2] The fact that the defendant has thus far failed to accurately report his sexual interests indicates to the government that the defendant has yet to come to terms with his sexual preferences, and in light of that, the government finds highly suspect the conclusion that the defendant "does not have sexual urges or fantasies involving children, does not appear to have an interest in child pornography, and does not exhibit symptoms consistent with pedophilic disorder. *See* Dkt. #26-2, pp. 7-8. As such, the government recommends a guideline sentence of imprisonment.

### C.   The Defendant's Conduct Has Negatively Impacted the Victims

In a child pornography case such as this one, the primary victims are the children depicted in the images possessed by the defendant. *United States v. Shutic*, 274 F.3d 1123, 1126 (7th Cir. 2001); *United States v. Sherman*, 268 F.3d 539, 547-48 (7th Cir, 2001). As the *Sherman* Court noted, "child pornography directly victimizes the children portrayed by violating their right to privacy." *Id.* As the Court noted in *Shutic*, "children ... suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse a secret." *Shutic*, 274 F.3d at 1126. (citations omitted). Therefore, a sentence for the defendant's conduct must account for the impact his conduct had on the victims depicted in the images of sought from the victims. On February 27, 2013, the United States Sentencing Commission issued a Federal Child Pornography Offenses Report ("Report"), which reaffirmed that all child pornography offenses perpetuates the harm to the victims depicted in the images and fuels a market for the production of such images. *See* Report, ch. 12, p. 311-12 (available at

---

[2] Bearing on the government's opinion that the defendant is sexually attracted to minor females is the fact that the defendant refused to provide the password to his locked iPhone and iPad that were recovered during the course of the investigation. As the PSR notes, these devices were ultimately unlocked and found to contain other un-identified minor females. PSR ¶ 41.

http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses, last accessed February 21, 2017).

The defendant's actions directly harmed the lives of at least 3 known victims. In particular, both Victim 1 and the mother for Victim 2, have asked this Court to sentence the defendant to the maximum sentence possible. Both of these victims were enticed by the defendant under false pretenses. Victim 1 has indicated that the defendant's criminal conduct affected her ability to attend school and that she attended counseling for approximately one year. PSR ¶ 45. The mother of Victim 2 noted that after the defendant's criminal conduct, Victim 2 "closed herself off and cried a lot," was "embarrassed and uncomfortable with others, and is not trusting of others." PSR ¶ 46. Therefore, the seriousness of the underlying offense clearly weighs in favor of a significant custodial sentence for the purposes of punishment and promoting deterrence. 18 U.S.C. § 3553(a)(1).

## CONCLUSION

For the foregoing reasons, the defendant should be sentenced to a term of incarceration within the advisory guidelines range.

DATED: Buffalo, New York, February 21, 2017.

                                              JAMES P. KENNEDY, JR.
                                              Acting United States Attorney

BY: ***S/ AARON J. MANGO***
                                              AARON J. MANGO
                                              Assistant U.S. Attorney
                                              United States Attorney's Office
                                              Western District of New York
                                              138 Delaware Avenue
                                              Buffalo, New York 14202
                                              (716) 843-5882
                                              aaron.mango@usdoj.gov